CITY OF ST. LOUIS, Appellant, *v.* WATERLOO-CARONDELET TURNPIKE AND FERRY COMPANY, Respondent.

### October 23, 1883.

1. CONSTITUTIONAL LAW — MUNICIPAL ORDINANCES — FERRIES. — An ordinance passed in pursuance of provisions of a municipal charter which authorizes the licensing of ferries within the city, does not violate the constitutional inhibition against the passage, by the legislature, of local or special laws.

2. —— An ordinance fixing a penalty for operating a ferry within the city limits, passed in pursuance of charter provisions, may be enforced, though the ordinance contains special provisions applicable only to a particular ferry.

3. —— The right to establish ferries is within the control of the state, and is not included in the power of the federal government to regulate commerce between the states, although the ferry crosses a river which divides two states.

APPEAL from the St. Louis Court of Criminal Correction, CADY, J.

*Reversed and judgment.*

LEVERETT BELL and SAMUEL ERSKINE, for the appellant: The city charter of St. Louis authorizes the mayor and assembly by ordinance to regulate and license all ferries into, or out of, or within the harbor, and to establish ferry rates. — 2 Rev. Stat., p. 1585, sect. 26, par. 4. This is a valid grant of power. — *Chilvers* v. *The People*, 11 Mich. 43; *The People* v. *Mayor*, 32 Barb. 102; *Fanning* v. *Gregoire*, 57 U. S. 524; *Conway* v. *Taylor*, 66 U. S. 603; *Wiggins Ferry Co.* v. *East St. Louis*, 102 Ill. 560.

McKEIGHAN & JONES and T. J. PORTIS, for the respondent: Whatever the people, by the state constitution, have forbidden the state government from doing, it can not indirectly do through the local goverments. — *Illinois College* v. *Cooper*, 25 Ill. 148; *Davenport* v. *Davenport*, 13 Iowa, 229; *Saving Society* v. *Philadelphia*, 31 Pa. St. 175.

A municipality may charge a reasonable compensation for the use of any improvement, or conveniences furnished and owned by it on wharf landings, but that this right must be carefully restricted to such rental charge, and must not pass this legitimate purpose. — *Packet Co.* v. *Keokuk*, 5 Otto, 80; *Packet Co.* v. *St. Louis*, 10 Otto, 423; *Cameron* v. *New Orleans*, 20 Wall. 577; *Steamboat Co.* v. *Port Wardens*, 6 Wall. 31; *Peete*- v. *Morgan*, 19 Wall. 581. A license fee, which is for revenue purposes, is a tax. When a license fee exceeds a reasonable compensation for the mere issuing of the license, as a municipal regulation under the police power, it becomes a tax, although the phraseology of a license may be retained. Cooley Const. Lim., 201; *Brown* v. *Maryland*, 12 Wall. 554; *Ward* v. *Maryland*, 18 Wall. 420.

Lewis, P. J., delivered the opinion of the court.

This is a proceeding against the defendant for keeping a ferry, without a license, within the limits of the city of St. Louis. The court of criminal correction gave judgment for the defendant. The first section of ordinance 10,414, as amended by ordinance 11,239, adopted by the municipal assembly of the city of St. Louis, prohibits the keeping of a ferry within the limits of the city, without a license therefor, "under a penalty of thirty dollars for each day such ferry may be kept without a license." The evidence was ample to sustain the complaint, and, if the ordinance is valid, there seems to be no reason why the plaintiff should not have recovered.

The twenty-fourth section of the ordinance makes some special provisions applicable only to the licensing of the present defendant to keep a ferry. The bulk of the argument here for the defendant is directed against the constitutional validity of this section. As the plaintiff's claim is made under the first section, and is not, in any manner

affected by the provisions of the twenty-fourth, so much of the discussion appears to be a waste of time.   The validity or invalidity of the twenty-fourth section has nothing to do with the plaintiff's right of recovery under the first.   The provisions of the ordinance are easily severable and full effect must be given to at least so many of them as are unimpeachable.

The municipal assembly of St. Louis, although in its forms of procedure, and in its making of certain general regulations for the government of the city's inhabitants, it has characteristics of a legislative body, yet, in its relation to the state constitution, it is in no sense a part or branch of that one of the three divisions of government which, in the distribution of powers, is designated as the legislative department.   In that relation it is purely ministerial, or executive, putting into specific effect, within a limited territory, the general purposes of. constitutional and statutory rules of action.   Where the General Assembly of the state can operate upon particular objects, only through general laws, the municipal assembly of St. Louis necessarily, and by the plain terms of the charter, acts directly upon the object itself.   By ordinance, it opens, vacates, alters, or improves a street, under its special name or description ; constructs a sewer in a particular locality, and regulates its use ; erects a wharf or dock, and establishes a market place, or a public park.   In many other ways it does and must do, what the General Assembly could not do without violating the constitutional inhibitions against special legislation.   All is done by express authority of the city charter, whose constitutionality in that regard has never been questioned.   Rev. Stats. p. 1585.   The same authority permits the local body "to regulate and license all ferries,   *   *   *   to sell ferry privileges within the city limits, and to establish ferry rates."   How could it license a ferry, or sell a ferry privilege " by ordi-

nance," without acting directly upon the subject of the proceeding?

In the face of these simple truths, it is here insisted that, when the constitution commands the General Assembly to pass no local or special law, the municipal assembly of St. Louis must obey. In other words, wherever the organic law treats of the legislative department of the state government, it means to include all municipal the assemblies, town councils, and boards of trustees, of all the cities and towns in the state. Hence, the ordinance before us is void as an attempt at local and special legislation. There is nothing in the argument. It would have no weight against the provisions of the twenty-fourth section, above referred to. Still less can it be heard against the first section, which makes a general provision against all ferries doing business without a license.

It is further urged for the defendant that the ordinance violates section 10, subdivision 2, of article I., of the federal constitution, which declares that " no state shall   *   *   * lay any imposts or duties on imports or exports," and that " no state shall   *   *   *   lay any duty on tonnage," etc. Counsel cite a number of cases in which wharfage dues and other fees were assessed against steamboats and other vessels for the privilege of landing at state ports, and these charges were held to be in contravention of the provisions quoted. Neither the constitutional provisions, nor the authorities have any relevancy to the present case. The distinction between a law which hinders or imposes burdens on an existing commerce between the states, or between a state and foreign nations, and a law which prescribes conditions for establishing and carrying on the business of ferrying within or upon the borders of a state, is too obvious for discussion. A ferry privilege is a privilege of highway. As such, and as comprehended in the police power, it is within the sovereign control of the state; belonging to those rights and powers which were never surrendered in the federal com-

pact. In *Conway* v. *Taylor* (66 U. S. 603), it was held by the United States supreme court, that "the authority to establish and regulate ferries is not included in the power of the federal government to 'regulate commerce with foreign nations and among the several states and with the Indian tribes.' The authority to regulate ferries has never been claimed by the general government, has always been exercised by the states, never by congress, and is undoubtedly a part of the immense mass of undelegated powers reserved to the states respectively." In the same decision it was held that the case was not altered by the fact that the course of the ferry was from one state to another across the Ohio River. Each state controlled the ferry as to its own landing. "A ferry is in respect of the landing place, and not of the water. The water may be to one, and the ferry to another." Such has always been the well understood doctrine of state control, and no authority to the contrary can be found. Counsel suggest that, in the case referred to, "no duty, tax, or impost was levied on the grantee or licensee of the franchise, as a condition of the franchise or license." The report does not sustain the suggestion. But, if it did, it would not affect the question. The power recognized in the state is one of absolute control, without any limitation of terms or conditions upon its exercise. A right to license implies a right to prohibit. And a right to prohibit necessarily includes the right to impose conditions upon a grant of the franchise.

The case for the city was fully made out, and no reason is shown why a judgment should not have been rendered in its favor. The judgment is reversed, and a judgment will be entered here in favor of the plaintiff, for the amount claimed in the complaint. All the judges concur.