STATE EX REL. RICHARD CARROLL, V. JAMES T. CAMPBELL ET AL., Respondents.

### St. Louis Court of Appeals, May 3, 1887.

1. INJUNCTION—EFFECT OF APPEAL WITH SUPERSEDEAS.—An appeal with a proper supersedeas bond from a judgment, dissolving a preliminary injunction and dismissing the bill, has the effect of continuing in force the injunction granted.

2. —— PROCEEDING FOR CONTEMPT—JURISDICTION.—When an appeal is perfected the trial court loses its jurisdiction of the cause, except for the perfecting of its records, and, thereafter, the court to which the appeal is taken has jurisdiction to prevent a violation of the injunction.

MOTION for attachment.

*Motion sustained.*

J. B. DENNIS, with whom are DYER, LEE & ELLIS, for the relator: When the appeal was taken and the supersedeas bond given in the court below that court lost all control and jurisdiction over the case and had no power to make any orders therein except to correct its own record. *DeKalb County v. Hickson*, 44 Mo. 341; *Bell v. Meek*, 20 Mo. 358; *Ladd v. Couzins*, 35 Mo. 513; *Stewart v. Stringer*, 41 Mo. 400; *The State v. Lubke*, 15 Mo. App. 172. Where a temporary injunction has been granted in the circuit court, and, upon final hearing, the injunction is dissolved and bill dismissed, an appeal with a supersedeas bond operates to continue the restraining order in full force while the case is pending in the appellate court. *The State v. Lewis*, 76 Mo. 370; *Lewis v. Leahey*, 14 Mo. App. 566; *Yokum v. Moore*, 4 Bill. 221; *Balkum v. Huper*, 50 Al. 372; *Turner v. Scott*, 5 Rand. 332; *Williams v. Powers*, 48 Tex. 141; *The State v. Lubke*, 15 Mo. App. 172.

GEO. D. REYNOLDS and FRANK E. BURROUGH, for the respondents: An appeal does not reinstate a dissolved injunction. High on Inj. 423, 1076; Kerr on Inj. 635.

LEWIS, P. J., delivered the opinion of the court.

The relator, claiming an exclusive ferry privilege under a license from the municipal authorities of the city of Cape Girardeau, commenced suit for a perpetual injunction against the defendants, to restrain them from continuing to operate a ferry within the limits, on the banks of the Mississippi river, which were covered by the relator's franchise. A temporary injunction was granted, after which there was a change of venue from the Cape Girardeau to the Madison circuit court. In

the latter court, the cause was heard upon its merits under a motion to dissolve the injunction, whereupon the motion was sustained, and the bill dismissed. The relator took an appeal to this court, and gave a bond, which was declared, by order of the circuit court, to operate a supersedeas. The appeal was perfected on October 5, and the transcript was filed in this court on October 23, 1886. On October 26, 1886, the present information was filed, in which, after a recital at length of the proceedings above mentioned, it is charged that the defendants, Campbell and Houck, together with one Albert Schultz, who is their servant, and who is summoned as a party hereto, "did, on or about Monday, the eighteenth day of October inst., in contempt of the power, jurisdiction, and authority of this court, commence running and operating their said ferry-boat, 'Rosalie Smoot,' and did commence doing a general ferrying business by transporting passengers and freight from the city of Cape Girardeau, Missouri, and have ever since been, and threaten still to continue, so to do, to the great damage of your relator herein, to-wit, in the sum of twenty dollars per day, each day they so run, and in open and flagrant contempt of the authority of this court." The information concludes with a prayer that the defendants be attached for contempt, and that such further orders be made as will compel obedience to said injunction, until a hearing and determination of the matters in controversy.

In response to a notice to show cause against the prayer of the information, the defendants, Campbell and Houck, file their return, setting up several matters of defence, to all of which the plaintiff demurs, for insufficiency in law. As the return contains, presumably, everything that the defendants can allege in their defence against this proceeding, the return and the demurrer will be so considered by us as to dispose of all the matters involved in the present application.

The return admits that the defendants have been

operating their ferry, as charged, ever since about the twenty-ninth day of September, 1886, when the temporary injunction was dissolved by the circuit court, as appears in the record. It is then averred that this court has no jurisdiction of the original cause, or of this proceeding, because the ferry license, granted to the plaintiff by the municipal authorities of Cape Girardeau, was an attempt to grant special and exclusive rights and privileges, and was, therefore, in violation of section 53, article 4, of the constitution of this state; wherefore, the supreme court has exclusive appellate jurisdiction of the matter in controversy, and of all proceedings growing out of the same. The constitutional provision referred to, declares that: "The general assembly shall not pass any local or special law  *  *  *  granting to any corporation, association, or individual, any special or exclusive right, privilege, or immunity."

This court held in *St. Louis v. Ferry Company* (14 Mo. App. 216), that the granting of a ferry license, by a municipal corporation, under its charter, was not a local or special law, within the meaning of this constitutional provision, and was not, in any manner, affected by it. We see no occasion for receding from the views expressed in that case. The decision stamps this feature of the return as a nullity, and unworthy of serious consideration.

The next point made by the return is, "that the matter in dispute relates to commerce between the states of Missouri and Illinois, and is one that presents a question of the construction of the constitution of the United States." The decision of this court, already referred to, shows that no such question is involved in the granting or withholding of a ferry license by a municipal corporation, and that no provision of the federal constitution has anything to do with such questions as are involved in this proceeding, or in the proceeding to which this is incidental. This feature of the return is also unavailable to the defendants for any purpose.

The return avers that, on the face of the record, it appears that the case is not one in which an injunction should ever have issued, and that the relator was never entitled to an injunction on the facts stated. If this proposition were true, it would . be wholly irrelevant and immaterial to the matter in hand. That an injunction was, in fact, granted by a competent authority, held to be such under the laws of this state, is sufficient to render the defendants liable as for a contempt, if they have wilfully disobeyed it, as the information charges.

It is further averred by the return, that "the appeal in this case did not reinstate the injunction, and that there is no injunction now in force." The contrary of this proposition has been definitely settled by the law of this state, and that it is properly so settled, hardly admits of discussion. Learned counsel, in citing authorities from other jurisdictions to show that an appeal does not continue in force a temporary or interlocutory injunction, seem to forget that, in this state, as well as in others, the appeal is not relied on for such an effect. An appeal, with nothing more, leaves the final judgment in full force; and if that includes the dissolution of an existing injunction, such injunction becomes henceforth a nullity. But our statute provides for a "stay of execution," upon the interposition of a bond with proper conditions. This stay of execution necessarily effects a *supersedeas*, or suspension of the operative force of the *judgment*, but nothing more. All other attributes or conditions of the cause remain just where they stood before the judgment was pronounced. The temporary injunction, incorporated in the record at an earlier stage, remains untouched, just as much as the petition, the answer, or any order of court made in the progress of the cause. In New Jersey and other states, an order for a "stay of proceedings," made by the appellate court upon an appeal from a judgment which includes the dissolution of an injunction, is held as continuing the injunction in force. *Doughty v. Railroad*, 7 N. J. Eq. 629. The

same effect must be given to our statute, when its conditions are fulfilled.    Such was the conclusion reached by this court in *Lewis v. Leahey* (14 Mo. App. 564), and we find no reason for departing from it.    On the face of this record, the temporary injunction, granted at the institution of the proceedings, is in full force to-day.

The defendants contend that, even if it be true that the temporary injunction was continued in force by the appeal and bond, yet the present proceeding can not be lawfully maintained here, because no restraining order has ever emanated from this court, or any judge thereof, and it is against the law for any one court to undertake to punish for a contempt of another court, or its process. We are reminded, also, that the only statute on the subject (Rev. Stat., sect. 2716) directs that, "if any person disobey or violate an injunction, after it is served on him, the circuit court to which it is returned, or any judge thereof in vacation, shall issue an attachment against him for a contempt," etc.

If the statute, in its special adaptation to the circuit court, confers no power on the appellate courts in the same connection, it, at least, does not deny to them any inherent power which grows, naturally, out of their jurisdiction, or which is essential to the due performance of their prescribed functions.  When an appeal is perfected, the court which rendered the judgment loses all jurisdiction over the cause and its parties, except only such as may be necessary for the perfecting of its own record.    It can not, therefore, enforce any order, previously made, by punishment for a contempt, or otherwise.    But can it be supposed to result that an act, which the law, through its judicial mouth-piece, has expressly forbidden, may, nevertheless, be openly committed, day after day, from the appeal to the ultimate determination of the cause ; and yet, that there will be no arm to arrest, punish, or repress ?    Proceedings for a contempt are not intended to vindicate the personality of the judge whose order is disobeyed, or even merely the court over which he pre-

sides, except in so far as either represents the sovereign power of the state, in its administration of justice to the citizen.   The sovereignty never sleeps, and never fails of its own vindication for want of a proper instrument.  Such an instrument is always to be found in a court wherein a cause is pending, whose exigencies demand the interposition of the sovereign authority against an infraction of the law.   We can not better exemplify a proper application of these general principles, than by quoting what was said by the New Jersey court of errors and appeals, in the case of *Doughty v. Railroad* (7 N. J. Eq. 629), when the right of the court to order a stay of proceedings was brought into question :  " The injunction being dissolved, the appeal can not revive the process, or give it force.  It can not be revived but by a new exercise of judicial power.  It is, in effect, the granting of a new injunction.   It is said that this is an original exercise of judicial power ; and unquestionably it is so.   It is, thereupon, objected that this is a mere appellate tribunal, and can not exercise such power.  The consequence does not follow.   It may not exercise original power in acquiring jurisdiction over the cause.   But that jurisdiction, once regularly obtained, this court may exercise original jurisdiction over the parties, especially when the proceeding is *in rem*, and the object of the order to maintain, unchanged, as far as practicable, the *status*, or condition of the subject matter of the controversy, during the pendency of the suit.   It is on the same principle upon which a court of common law, in an action of ejectment or dower, will make an order upon the party in possession, restraining the commission of waste.   And a court of equity, prior to the hearing or argument, will, upon the same principle, grant a temporary injunction until the case can be heard.   It is an inherent power, in all superior tribunals, essential to the attainment of the object of litigation and the ends of justice."

We can not entertain a doubt, that, with the pen-

dency of the original cause in this court, there inheres in this court an original jurisdiction over the parties, "to maintain, unchanged, the *status*, or condition of the subject matter of the controversy during the pendency of the suit," and that the exercise of that jurisdiction, as demanded in the present instance, is "essential to the attainment of the object of litigation and the ends of justice."

The demurrer, as to all the allegations of the return, which attempt to excuse or justify the running of the defendants' ferry, as charged in the information, is sustained. The material admissions of fact in the return are deemed sufficient to hold the defendants liable to be dealt with for a contempt of the lawful authority of this court.

It is, therefore, ordered that an attachment issue against the bodies of the defendants, James T. Campbell and Louis Houck, so that they be, and personally appear before this court on Tuesday, the seventeenth day of May, 1887, then and there to do and receive whatsoever this court shall find it lawful and proper to direct. All the judges concur.